**FIFTY–SIX THOUSAND SEVEN HUNDRED DOLLARS IN U.S. CURRENCY, Petitioner,**

v.

**The STATE of Texas, Respondent.**

No. C–5446.

Supreme Court of Texas.

May 20, 1987.

Rehearing Denied June 24, 1987.

Joseph Abraham, Jr. and Charles Louis Roberts, El Paso, for petitioner.

Steve W. Simmons, Dist. Atty., and Stephen G. Jurecky, Asst. Dist. Atty., El Paso, for respondent.

MAUZY, Justice.

This cause presents the question of whether money, which was seized along with illicit drugs and paraphernalia during the search of a residence, is subject to civil forfeiture pursuant to the Controlled Substances Act, TEX.REV.CIV.STAT.ANN. art. 4476–15, § 5.03(a)(6) (Vernon's Supp. 1987).

The State brought this action to obtain an order of forfeiture of $56,700 in U.S. currency recovered by police officers during the seizure of cocaine at the condominium of Harry Farah. The trial court found that Mr. Farah, the defendant-in-interest, had derived the money from the sale and/or distribution of illegal drugs and ordered forfeiture of the $56,700. The court of appeals, with one justice dissenting, affirmed. 710 S.W.2d 65. We reverse the judgments of those courts and render judgment that the money seized is not subject to forfeiture under the Act.

■ The forfeiture provision of the Controlled Substances Act provides that:

[A]ll money, certificates of deposit, negotiable instruments, securities, stocks, bonds, businesses or business investments, contractual rights, real estate, personal property, or other things of value used or intended for use in violation of Section 4.052 of this Act or *derived from* the *sale, manufacture, distribution, dispensation, delivery, or other commercial undertaking* violative of this Act ...

are subject to forfeiture by the State. TEX.REV.CIV.STAT.ANN. art. 4476–15, § 5.03(a)(6) (Vernon's Supp.1987) (emphasis added). Further, section 4.052 provides that an offense is committed if a person knowingly or intentionally *expends* funds he knows are derived from the commission of an offense, or *finances or invests* funds he knows or believes are intended to further the commission of an offense. Con-

trolled Substances Act, art. 4476–15, § 4.052(a)(1), (2) (emphasis added). To "derive" currency from the sale or distribution of illicit drugs under the Act means "to trace the origin, descent or derivation from" such sale or distribution, or "to have or take origin" in the sale or distribution. *WEBSTER'S NEW INTERNATIONAL DICTIONARY* 608 (3rd ed. 1960).

The State contends that because the currency was found in proximity to cocaine and paraphernalia, the money is derived from the sale and distribution of a controlled substance. Mr. Farah asserts there is no evidence that the currency seized was derived from an enumerated offense;[1] that the trial court erred in admitting the fruits of the search and seizure by failing to rule on Mr. Farah's constitutionally-based objections; and that the State lacked probable cause for the search and seizure in violation of the U.S. and Texas Constitutions.

 In forfeiture proceedings, the burden is on the State to show probable cause for seizing a person's property. TEX. CONST. art. I, § 9 (1876). Probable cause in the context of forfeiture statutes is a reasonable belief that "a substantial connection exists between the property to be forfeited and the criminal activity defined by the statute." *United States v. $364,960.00 in U.S. Currency*, 661 F.2d 319, 323 (5th Cir.1981). It is that link, or nexus, between the property to be forfeited and the statutorily defined criminal activity that establishes probable cause, without which the State lacks authority to seize a person's property. TEX. CONST. art I, § 9. Further, in *One 1980 Pontiac v. State*, 707 S.W.2d 881 (Tex.1986), this court noted that the intent of the legislature in passing and amending the Controlled Substances Act was "to facilitate forfeitures of assets used by *drug dealers.*" *One 1980 Pontiac*, 707 S.W.2d at 882–883 (emphasis added).

On June 29, 1984, undercover police officers executed a search warrant on Mr. Farah's three-level condominium in El Paso. Entry to the residence was gained through Mr. Farah's sister; Mr. Farah was not present. Upon learning of Mr. Farah's whereabouts, police officers were dispatched to a local restaurant and returned to the condominium with Mr. Farah in custody. In the third-floor loft, which was the master bedroom, police officers pried open a steel door that led to a walk-in closet and a large bathroom area. A safe in the bathroom contained approximately three grams of cocaine and a zippered bank bag, which contained $56,700 in banded $100 bills. Other small amounts of cocaine were located in the vaulted bathroom area and in a desk drawer on the first level of the condominium. An array of paraphernalia, including hundreds of vials, most of which were unused, pills, two funnels, a grinder, non-narcotic white powder, two sets of scales, snorting tubes, and photographs depicting homosexual activity and drug use also were found. In total, 22 grams, or less than an ounce, of cocaine and 30 grams, which is slightly more than an ounce, of marijuana were seized.

 We first consider Mr. Farah's no evidence point of error. In deciding whether there is evidence of probative force to support a finding, this court must consider only the evidence and inferences tending to support the finding and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). The State's evidence in support of the proposition that the $56,700 was "derived from" the sale or distribution of the drugs is slight. A detective testified that Anositol, which is Vitamin B in powder form, and a quantity of which was seized, is the most common agent used to "cut" cocaine; that scales are used to measure precise amounts of cocaine; that once cut, cocaine is placed in vials for distribution; and that the street price of a one-gram vial of cocaine ranges from $100 to $150. A detective further testified that cocaine also is sold in "diamond folds," i.e.; paper folded in such a way as to be a container for

---

1. Mr. Farah was charged with possession. As the point is not presented, we do not decide whether a charge of possession, which is not an enumerated offense under the Controlled Substances Act, will support a forfeiture.

cocaine. Two "diamond folds" with cocaine residue also were seized during the search of Mr. Farah's condominium. Although the State's chief witness testified that Mr. Farah's residence ·was under surveillance for the month preceding the search, there was no testimony of any suspicious activity during that time.

Mr. Farah, an architect, offered direct evidence that he was involved in the construction and renovation of a hotel and restaurant in Mexico, and further, that U.S. suppliers required up-front cash payments for purchases intended for projects in Mexico. Sub-contractors and suppliers testified that because of the devaluation of the peso they required cash payments and were awaiting payment from Mr. Farah for labor performed, supplies installed and merchandise which had been ordered and now is stored in warehouses. A courier testified that during an approximate two-week period just prior to the search he picked up large amounts of cash from the project owner in Mexico and delivered the money to Mr. Farah in El Paso.

■■■ Any presumption which may have arisen that the currency was derived from the sale or distribution of illicit drugs was rebutted by the foregoing testimony. *Scott v. Millers Mutual Fire Insurance Company of Texas*, 524 S.W.2d 285, 288 (Tex.1975). We have in this cause meager circumstantial evidence giving rise to inferences which are equally consistent with the proposition that Mr. Farah was a purchaser/user of drugs. *Litton Industrial Products, Inc. v. Gammage*, 668 S.W.2d 319, 324 (Tex.1984). When circumstances are consistent with either of two facts and nothing shows that one is more probable than the other, neither fact can be inferred. *Id.*

■■■ We conclude that the required nexus, or link, between the currency and an enumerated offense is lacking and that there is no more than a scintilla of evidence supporting the proposition that the currency is derived from or has its origin in the sale and/or commercial distribution of cocaine. Thus, we need not consider Mr. Farah's remaining points of error.

We hold that there is no evidence to support the forfeiture of the $56,700, reverse the judgments of the courts below, and render judgment that the State take nothing.

CAMPBELL, J., files a dissenting opinion in which HILL, C.J., and SPEARS and GONZALEZ, JJ., join.

CAMPBELL, Justice, dissenting.

I dissent. The only issue before this Court is raised by Farah's no evidence point. The State has produced some evidence showing the forfeited currency was derived from the sale and distribution of controlled substances.

The State's burden was to prove by a preponderance of the evidence that the currency was subject to forfeiture. Tex.Rev. Civ.Stat.Ann. art. 4476–15, § 5.07(b) (Vernon Supp.1986). Thus, the State was required to prove by a preponderance that the currency was derived from the sale or distribution of controlled substances. *Henderson v. State*, 669 S.W.2d 385, 387 (Tex.App.—San Antonio 1984, no writ); *Valles v. State*, 646 S.W.2d 636, 638 (Tex. App.—Houston [1st Dist.] 1983, no writ). In attempting to satisfy this burden, the State did not offer any direct evidence of a sale or distribution nor was it required to ˙ under the statute. Instead, it produced an abundance of circumstantial evidence linking the currency to illegal drug trafficking. Any ultimate fact may be proved by circumstantial evidence. *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 755 (Tex. 1975).

I summarize the facts which constitute some evidence the money was derived from drug trafficking. Nearly all of the evidence discovered in Farah's apartment was found in a metal vault which contained a walk-in closet and bathroom. Inside the vault, there was a safe where over three grams of cocaine were found alongside 567 one hundred dollar bills. Around the bathroom vanity, the police found (1) approximately 40 grams of cocaine, over half of which was pure cocaine, (2) several jars and vials containing cocaine residue, (3) items associated with cocaine distribution, name-

ly, a funnel, a grinder, and jars of a cutting mixture, and (4) several bottles of Penalty Group I and II drugs. In the walk-in closet, the police found (1) a scale kit, (2) approximately 13 grams of marijuana, (3) numerous other vials containing cocaine residue, (4) a bag containing 300–400 clean, unused vials, and (5) a magazine article entitled, "Cocaine, You Can Bank On It," which discussed the cocaine business including methods for "laundering" money. Elsewhere in the apartment, the police recovered another scale kit, more marijuana, and more vials. The State also introduced expert testimony which indicated that the cocaine, when reduced to street grade and quantity, would yield over 200 grams of "street quality cocaine" valued in excess of $20,000.

The Court holds that a fact finder could only infer from this evidence that Farah was a user of drugs. It concludes that the evidence only raised a mere suspicion of drug dealings. The majority has misapplied the rules relating to inferences and has invaded the province of the fact finder. It is well established that more than one inference may be drawn from a single fact situation. *Walters v. American States Ins. Co.*, 654 S.W.2d 423, 426 (Tex.1983); *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 757 (Tex.1975). Although inferences drawn from circumstantial evidence may be rebutted, this question is determined by the fact finder unless only one reasonable deduction can be drawn therefrom. *Ross v. Green*, 135 Tex. 103, 139 S.W.2d 565, 572 (1940). The proponent of such evidence need not disprove all other possible conclusions which could be drawn from the circumstances. *Farley*, 529 S.W.2d at 755.

From this fact situation, the fact finder could have reasonably inferred that Farah was involved in drug trafficking and that the $56,700 was derived from the sale of controlled substances. The rebuttal testimony, about the renovation of a Mexican hotel, does not present the only possible explanation for accumulating this large quantity of cash. Indeed, one court has held that "from the sheer quantity of currency seized under these circumstances, a court may permissibly infer a connection with illegal narcotics trafficking." *United States v. $364,960.00 in U.S. Currency*, 661 F.2d 319, 324 (5th Cir.1981). The fact finder made a "reasonable inferential leap" based on the facts proved in this case. *Walters*, 654 S.W.2d at 426. The circumstantial evidence relied upon by the trial court has the probative force sufficient to constitute a basis for legal inference that the currency was derived from the sale of cocaine. Therefore, it is the duty and responsibility of this Court to uphold the findings and judgment of the trial court and not to substitute its judgment for that of the trial court. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 633 (Tex.1986). The Court has held there is no evidence to support the finding of the trial court. Surely, the evidence cited is *some* evidence.

HILL, C.J., and SPEARS and GONZALEZ, JJ., join in this dissenting opinion.