COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 

 




 
 
  
 THE STATE OF
 TEXAS,
  
                             Appellant,
  
 v.
  
 SEVENTEEN
 THOUSAND THREE HUNDRED FIFTY DOLLARS IN U.S. CURRENCY AND ONE 1995 CHEVROLET
 CAMARO AUTOMOBILE,
  
                             Appellee.
 
 
  
 '
  
 '
  
 '
  
 '
  
 '
 
 
  
 No. 08-01-00151-CV
  
 Appeal from the
  
 112th Judicial District Court
  
 of Crockett County, Texas
  
 (TC# 00-03-06262-CR)
 
 




                                                                              

O P I N I O N

This is an appeal from a forfeiture
proceeding.  For the reasons stated, we
affirm.

I.  SUMMARY OF THE EVIDENCE








On February 23, 2000, Nick Richter,
an officer with the Rio Concho Multi-Agency Drug Enforcement Task Force,
stopped a 1995 Chevrolet Camaro for speeding in Crockett County, Texas.  Marco Duncan was driving the car while Angel
Green was a passenger.  The owner of the
vehicle, Terrence Roberts, was not present. 
Officer Richter obtained consent to search the vehicle from Duncan and
Green.  During the search Officer Richter
and his partner, DuWayne Castro, found an envelope under the front passenger
seat that contained seventeen thousand dollars ($17,000) in cash.  The agents also found $350 in Green=s purse.[1]
                   Additionally, the
agents found an arrest report that showed Green had been arrested six days
earlier in Okaloosa County, Florida, for trafficking fifty-four (54) grams of
crack cocaine.  The report stated that
William Tracy McGowan had been arrested for the same charge and had $3,696 in
cash on his person.  The cocaine was
found in Green=s pants but McCowan claimed that the
cocaine belonged to him.  The report also
reflected that McCowan admitted that the cash he had was proceeds from sales of
crack cocaine.  The report showed that
Duncan was present during the arrest and was driving the vehicle in which
McCowan and Green were riding.  Duncan
informed the officers that the marijuana was his and told them where it was
located inside the vehicle.  The report
indicated that the officers located 4.3 grams of marijuana. 

After finding the arrest report, the
agents found a Western Union wire receipt showing that Duncan wired Catherine
Rose $5,000 on February 21, 2000, two days prior to the asset seizure.  The agents also found air travel
documentation for Duncan, reflecting round trip travel from San Jose,
California to Orlando, Florida, on February 5, 2000, and returning on February
10, 2000.  Finally, a notebook was found
in the vehicle that was identified as a drug ledger. 








During the search, Duncan told Agent
Richter that the vehicle belonged to his cousin, Roberts, and Duncan had the car
because he needed to get home.  Duncan
explained that he was going to freight the car back to Roberts after he arrived
in California.  After the agents found
the $17,000 in the vehicle, Duncan told Agent Richter that he was taking the
vehicle from Florida to California to have a hydraulic system and a custom
paint job done. 

Green told Agent Richter that she and
Duncan were going back to California after being on vacation together in
Florida.  She explained that the money
was theirs and was brought to buy things because prices were cheaper in
Florida.  Green stated that they were
driving the vehicle to California because they were in a hurry to get home and
that they were going to freight the car back to Duncan=s cousin in Florida when they
arrived.  

Of the $17,350 that was seized,
Roberts claimed $13,000, Duncan claimed $4,000, and Green claimed $350.  The Camaro was claimed by Stan Williams on
behalf of Saturn of Pensacola.  

Lieutenant Kevin Holloway testified
that fifty-four (54) grams of crack cocaine would make approximately 675 rocks,
or personal dosage units, of crack cocaine with a street value of around
$13,500.  He also testified that he spoke
with Williams, the general manager of the Saturn dealership that sold the
vehicle to Roberts.  Williams stated that
Roberts purchased the Camaro on February 22, 2000, by paying $7,000 cash as a
down payment.  The salesman, Richard
Hatcher, advised Lt. Holloway that Roberts came in on February 23, 2000, and
asked to pay the balance of the sales price in cash, approximately $4,800. 








In its Findings of Fact and
Conclusions of Law, the court noted that the State=s attorney did a Acredible job presenting
circumstantial evidence of the bad reputation of the parties involved, and that
the money had been tainted.@  However, the trial
court specifically found that the evidence was legally insufficient to support
a forfeiture because the State Afailed to establish a substantial connection or nexus between
the seized property and a defined criminal activity.@ 
This appeal follows.

II.  DISCUSSION

In it=s sole issue on appeal, the State
contends the trial court abused its discretion by requiring the State to prove
a nexus between the seized funds and criminal activity by tying the funds to a
specific underlying criminal offense.[2]  We begin with a discussion of the standard of
review.  

A. 
Abuse of Discretion Standard of Review








AA [party] who attacks the ruling of a
trial court as an abuse of discretion labors under a heavy burden.@ 
Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex.
1985) (orig. proceeding).  The test for
abuse of discretion is not whether, in the opinion of this Court, the facts
present an appropriate case for the trial court=s actions.  Rather, it is a question of whether the court
acted without reference to any guiding rules and principles.  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 476 U.S. 1159 (1986); Amador
v. Tan, 855 S.W.2d 131, 133 (Tex. App.--El Paso 1993, writ denied).  Another way of stating the test is whether
the act was arbitrary or unreasonable.  Downer,
701 S.W.2d at 242 (citing Smithson v. Cessna Aircraft Co., 665 S.W.2d
439, 443 (Tex. 1984)); Amador, 855 S.W.2d at 133.  The mere fact that a trial court may decide a
matter within its discretionary authority in a different manner than an
appellate judge in a similar circumstance does not demonstrate that an abuse of
discretion has occurred.  Downer,
701 S.W.2d at 242 (citing Southwestern Bell Telephone Co. v. Johnson,
389 S.W.2d 645, 648 (Tex. 1965)).  A mere
error of judgment is not an abuse of discretion.  Loftin v. Martin, 776 S.W.2d 145, 146
(Tex. 1989).         

Property, including money, is subject
to seizure and forfeiture if it is shown to be Acontraband.@ 
Tex. Code Crim. Proc. Ann.
art. 59.02(a) (Vernon Supp.2001).  AContraband@ is property used or intended to be
used in the commission of certain felonies, or proceeds derived from those
felonies, including drug‑related offenses described in Section 481.112 of
the Health and Safety Code. Tex. Code
Crim. Proc. Ann. art. 59.01(2)(A)‑(C) (Vernon Supp. 2001); Tex. Health & Safety Code Ann. '' 481.102, 481.112 (Vernon 1992).  The character of seized money as contraband,
subject to forfeiture, must be proved by the State by a preponderance of the
evidence.  Tex. Code Crim. Proc. Ann. art. 59.05(b) (Vernon
Supp.2001).  The proof may consist of
circumstantial evidence.  State v.
$11,014.00, 820 S.W.2d 783, 785 (Tex.1991). 
However, without a showing of a substantial connection between the
property to be forfeited and the statutorily defined criminal activity that
establishes the required probable cause, the State lacks authority to seize a
person=s property.  $56,700 v. State, 730 S.W.2d 659, 661
(Tex. 1987).








Here, the State established that Green
had been arrested six days earlier in Florida for trafficking fifty-four (54)
grams of crack cocaine.  While the
cocaine was found in Green=s pants, McCowan claimed that the cocaine belonged to
him.  The report also showed that Duncan
was present during the arrest and was driving the vehicle in which McCowan and
Green were riding.  Finally, Duncan
admitted that the marijuana inside the vehicle was his.  The officers subsequently located 4.3 grams
of marijuana. 

The question of the nexus connection
was debated at trial.  The following
exchange occurred:          

The Court:                  But
where is the nexus, the nexus or connection to what offense? I mean, what
offense did they commit?

 

The State:                   They
are engaged in the ongoing criminal enterprise of delivery of controlled
substances.

 

The Court:                  Where?
Where did they engage in it?

 

The State:                   In
Florida and California we have convictions, Judge.

 

The Court:                  No.
No. No.  The convictions are out of the
question. To forfeit something, there has got to be an offense.  Now, I can=t figure
out where the offense was.

 

The State:                   Judge,
the offenses in the past go to show the ongoing business.

 

The Court:                  Wait
a minute. You have got the right to prove by circumstantial evidence about the
car, but the nexus question, you have got to prove the commission of an
offense, and I haven=t heard any proof of an offense yet. That=s my problem. I=m not
saying -- I=m not ruling on it. I=m saying
I would like a case on that.

 

The State:                   You
bet, Judge. The Court:  Do you see my
point?

 

Defense Counsel:      Yes,
sir, but that=s our whole argument is [sic], there is no underlying
felony. There is no connection.

 








The Court:                  That=s what I need, a case on that to -- it seems to me in
these -- you know, I have been to these seminars and so forth and they talk
about the nexus problem. And, of course, this recent Texas case here that I
have does, too. So I need -- I need a case -- if you can -- if you can show me
where you can have a forfeiture just in general principles, because a lot of
these cases -- and the text refers to the commission of an offense.  And if you can prove that offense was
committed, and then by circumstantial evidence you can prove it was in the car,
then you have got something, but, to begin with, you have got to prove an
offense was committed. And I don=t see
where you have got any evidence that these people committed an offense.  That=s my
problem. Do you see what I mean?

 

As noted
previously, without a showing of a substantial connection between the property
to be forfeited and the statutorily defined criminal activity that establishes
the required probable cause, the State lacks authority to seize a person=s property.  $56,700, 730 S.W.2d at 661.  The trial court clearly applied this standard
in making its determination that Athe State has failed to establish a
substantial connection or nexus between the seized property and a defined
criminal activity.@  The State has failed
to show that the trial court acted without reference to any guiding rules and
principles.  Accordingly, we find that
the trial court did not abuse its discretion. 
Issue No. One is overruled and the judgment of the trial court is
affirmed.

June 13, 2002

 

 

RICHARD BARAJAS, Chief Justice

 

 

Before Panel No. 4

Barajas, C.J., Larsen, and McClure, JJ.

 

(Do Not Publish)











[1] After the vehicle and cash were seized, a narcotics
detection dog alerted to the vehicle. 





[2]  We note that
the State does not challenge the sufficiency of the evidence, only the trial
court=s alleged improper application of the standard.