**$130,510.00 IN U.S. LAWFUL CURRENCY, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06-07-00132-CV.

Court of Appeals of Texas, Texarkana.

Submitted July 9, 2008.

Decided Sept. 12, 2008.

Troy A. Hornsby, Miller, James, Miller & Hornsby, LLP, Texarkana, for Appellant.

David Colley, Asst. Dist. Atty., Mount Pleasant, for Appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

$130,510.00 in cash belonging to Manuel Alvarez[1] has been forfeited as contraband. That forfeiture was decreed based on circumstantial evidence of suspicious factors, including drug-dog alerts on the exterior of a pickup truck in which the cash was being transported and arguably on wrappings removed from that bundled cash. The trial court found the cash was contraband, in spite of evidence of a plausible,

---

1. Manuel Alvarez and Heron Alvarez will be referred to herein by their first names, to distinguish between the two brothers.

and at-least-partially corroborated, explanation for the legitimate presence of that quantity of cash in the truck at that time.

Manuel appeals, asserting the absence of legally and factually sufficient evidence to support the forfeiture. Finding that (1) the evidence is legally sufficient but that (2) the evidence is factually insufficient, we reverse the judgment of the trial court and remand for a new trial.

About 12:55 a.m. on April 2, 2006, Texas Department of Public Safety (DPS) Trooper Daniel Crooks stopped a two-week-old Dodge truck[2] traveling west on Interstate 30 (I–30) in east Texas. Crooks said the truck was going seventy-five miles per hour, in excess of the nighttime speed limit of sixty-five. Driver Basilio Espinoza had an identification card but no driver's license. In the truck were Heron Alvarez, Monica Ibarra, and two children. Heron was described by Crooks as nervous, with a cracking voice and rapid breathing. Espinoza and Heron both told Crooks there were no large sums of money in the truck, but consented for Crooks to search the truck. Crooks found, under the carpet in the back of the truck's cab, a bundle of cash enclosed in plastic shrink-wrap and electrical tape. At the scene, Heron said the money belonged to his brother Manuel, Ibarra's husband. Espinoza and Heron were arrested for money laundering.

Crooks summoned a drug detection dog, handled by Titus County Deputy H.L. Beasley. The dog alerted on the exterior of both rear doors of the truck. Beasley said this was evidence the dog (Lucky) had detected the odor of at least one of four illegal drugs[3] the dog had been trained to detect. Later, at the DPS station, five more bundles of cash were found in the truck,[4] bringing the total amount of cash found in the vehicle to $130,510.00. Crooks said the stacks of money were packaged with rubber bands and shrink-wrap, with electrical tape on the outside with the tape's sticky side out. On the other hand, Trooper Darren Lubbe said the tape, sticky side out, was between the money and the shrink-wrapping. Though Manuel said he used shrink-wrap to bundle the money, the same way he packaged fish, he specifically denied using electrical tape in packaging the funds.

Later, at the DPS station, after the money had been removed from the wrappings, some of the wrappings were put beneath a "non-contaminated" trash can, and the drug dog alerted at the bottom of the can where the wrappings were. Beasley said that, given that the wrappings had been in contact with the money, this dog alert meant the money had "probably" been contaminated with a controlled substance.

Lubbe testified that I–30 is a drug corridor. Lubbe also said that drug dealers use "ready made families" to look like innocent travelers, sometimes even carrying luggage. Here, Heron traveled with Ibarra, Espinoza, and two children, as well as some luggage.[5]

2. Manuel, the owner of the truck and real party in interest, testified he had purchased the truck about two weeks before the traffic stop.

3. Marihuana, methamphetamine, cocaine, or heroin.

4. Crooks appears inconsistent here. He first said he found one bundle at the scene, then five more when he continued his search at the DPS station. Later, he said he found three bundles at the scene.

5. While those things are in evidence, we are skeptical that such evidence offers any probative value to support the State's case. In numerous forfeiture cases, we have seen testimony from various officers that a large number of roads in east Texas are "drug corridors" and no suggestion that any east Texas

Manuel said he and his wife, Ibarra, received a seven million dollar settlement from the death of a son in 2004. Corroborating evidence included a December 27, 2004, deposit made for $340,000.00 and ATM withdrawals totaling from $85,000.00 to $92,000.00. Lubbe testified that, when all the transactions are considered, there are records of withdrawals in the neighborhood of $82,000.00 to $92,000.00. Lubbe conceded that he did not know whether any checks were written for cash, leaving open the possibility that, if there were ATM transactions approaching $92,000.00, checks could have been easily cashed to total the balance needed—$38,510.00—to make up the $130,510.00 found in the truck.

Manuel said he went to Little Rock at the end of March so Heron could get a form from his probation officer. The form apparently could not be faxed or mailed. Manuel testified by deposition and at trial that he transported the cash to Little Rock to buy a house there, to give his children a better place to live. Manuel also testified that, previously, he paid about $50,000.00 in cash for his house in south Texas. Manuel also said they used the trip to pay final bills on an apartment he had rented for Heron's probationary period. When the group arrived in Little Rock, Manuel learned that his brother-in-law had died. So Manuel caught an airplane the next day to Harlingen, by way of Houston, for the funeral. In support, Manuel submitted into evidence a utility payment receipt, a lease, a flight itinerary, and other receipts. Lubbe confirmed that Espinoza had told him of Manuel's large settlement and of Manuel's intent to buy a house in Little Rock.

Manuel and Heron both admitted having felony convictions for possession of marihuana in the range of thirty to fifty pounds. When the truck was first stopped, Espinoza and Heron gave arguably inconsistent statements about the trip: Espinoza mentioned only the truck taking the trip from Mercedes to Little Rock. Heron, and later Manuel, confirmed that, during the first leg—Mercedes to Little Rock—the group had also used a second vehicle, a van. Manuel said the van had been brought from Mercedes to give to Manuel's sister.

■ To entitle itself to the forfeiture of the cash, the State had to prove by a preponderance of the evidence that the cash is contraband. Chapter 59 authorizes the State to pursue the forfeiture of funds that constitute proceeds from illegal drug trafficking. *See* TEX.CODE CRIM. PROC. ANN. arts. 59.01–.14 (Vernon 2006 & Vernon Supp.2008). Although Chapter 59 specifies no additional evidentiary requirements for forfeiture beyond proof that the property is contraband, the Texas Supreme Court has held that the State must also show probable cause for seizing a person's property. *See Fifty–Six Thousand Seven Hundred Dollars in U.S. Currency v. State,* 730 S.W.2d 659, 661 (Tex.1987); *see also State v. $11,014.00,* 820 S.W.2d 783, 784 (Tex.1991). "Probable cause in the context of forfeiture statutes is a reasonable belief that 'a substantial connection exists between the property to be forfeited and the criminal activity defined by the statute.'" *Fifty–Six Thousand Seven Hundred Dollars in U.S. Currency,* 730 S.W.2d at 661 (quoting *United States v. $364,960.00 in U.S. Currency,* 661 F.2d 319, 323 (5th Cir.1981)); *see State v. Thirty Thousand Six Hundred Sixty Dollars*

---

roads are *not* drug corridors. We also find it questionable that facts traditionally seen as suggesting innocence become suspicious when the government may be able to confiscate an item of substantial value by recasting such facts.

& no/100, 136 S.W.3d 392, 407 (Tex.App.–Corpus Christi 2004, pet. denied). Property, including currency, is subject to seizure and forfeiture if it is found to be contraband. Tex.Code Crim. Proc. Ann. art. 59.02(a).

Contraband is property used or intended to be used in the commission of certain felonies, or proceeds derived from those felonies. Tex.Code Crim. Proc. Ann. art. 59.01(2)(A)-(D); State v. Silver Chevrolet Pickup, 140 S.W.3d 691, 692 (Tex.2004). Germane to this case, contraband is money that is derived from or intended for use in manufacturing, delivering, selling, or possessing a controlled substance. Tex.Code Crim. Proc. Ann. arts. 59.01, 59.02; $24,156.00 in U.S. Currency v. State, 247 S.W.3d 739, 743 (Tex.App.–Texarkana 2008, no pet.); $27,920.00 in U.S. Currency v. State, 37 S.W.3d 533, 535 (Tex.App.–Texarkana 2001, pet. denied).

The statute places on the State the burden of proving, by a preponderance of the evidence, that the item being forfeited is subject to forfeiture. In re One Man's Rolex Watch Yellow Gold, 223 S.W.3d 451, 452 (Tex.App.–Amarillo 2006, no pet.). Although defenses and explanations are useful tools for analysis, the burden of proof [6] remains on the State to prove the funds were contraband, not on the owner [7] to prove the source or purpose of the funds.

*(1) The Evidence Is Legally Sufficient*

Under civil preponderance-of-the-evidence standards, evidence is legally insufficient only when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence establishes conclusively the opposite of the vital fact. City of Keller v. Wilson, 168 S.W.3d 802, 810 (Tex.2005); Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex.1998). The final test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." Wilson, 168 S.W.3d at 827. In making this determination, we credit favorable evidence if a reasonable fact-finder could credit it, and disregard contrary evidence unless a reasonable fact-finder could not disregard it. Id. This is more than a mere question of whether "evidence exists that has some remote relation to the verdict." Id. So long as the evidence falls within the zone of reasonable disagreement, we may not substitute our judgment for that of the fact-finder. Id. at 822. The trier of fact is the sole judge of the credibility of the witnesses and the weight to give their testimony. Id. at 819. Although we consider the evidence in a light most favorable to the challenged findings, indulging every reasonable inference that supports them, we may not disregard

6. Though no affirmative defense is relevant here, after the State meets its burden of proof, an innocent owner may establish the statutorily created affirmative defense of an innocent owner. Tex.Code Crim. Proc. Ann. art. 59.02(c). To prevail under that defense, once the State has met its burden, the burden shifts to the party claiming the defense to prove he or she acquired an ownership interest in the property prior to, or during, the act giving rise to forfeiture. Id.; State v. Thirty Thousand Six Hundred Sixty Dollars & no/100, 136

S.W.3d at 410; Bochas v. State, 951 S.W.2d 64, 71 (Tex.App.–Corpus Christi 1997, pet. denied).

7. The State claimed Manuel offered insufficient explanation for his possession of such a large sum of cash, but it was not his burden to do so, until the State first proved by a preponderance of the evidence it had probable cause to seize the money.

evidence that allows only one inference. *Id.* at 822.

■ Here, the State found a group of individuals in an almost-new pickup truck with $130,510.00 in cash shrink-wrapped and tucked beneath the carpet in the back of the truck's cab. A drug dog alerted on the outside of the truck, on the driver and passenger sides, and on the bottom of a trash can in the DPS station house. Beneath the trash can were wrappings taken from the money. Troopers described the wrappings as being shrinkwrap and tape previously containing the rubber-banded stacks of cash. Both Manuel and Heron have records for possession of large quantities of marihuana. When asked by officers on the scene if the truck contained any large quantities of cash, Heron and Espinoza initially denied it.

In *Deschenes v. State*, 253 S.W.3d 374 (Tex.App.–Amarillo 2008, no pet.), evidence was presented that a drug dog alerted on bags in the trunk of a vehicle, bags which had held money wrapped and rubber-banded together; and the arresting officer thought Deschenes was acting nervously and found a set of scales in the car. The appellate court found the evidence legally insufficient under the criminal burden of proof to support Deschenes' conviction for money laundering.[8]

On the other hand, a seizure was upheld where a large amount of cash was found, folded, rubber-banded, and put in plastic bags, and with fabric softener sheets then wrapped around those bundles. *State v. $104,000 in U.S. Currency*, No. 04–04–00608–CV, 2005 WL 2012341, at *2 (Tex. App.–San Antonio Aug. 24, 2005, no pet.) (mem. op., not designated for publication). That court, however, placed emphasis on the use of fabric softener sheets used in bundling the cash and on evidence that such sheets were used to foil drug-detection dogs. While there is no testimony in this record about the purpose of shrink wrapping funds, a logical inference could equate shrink-wrapping—which describes vacuum-sealing something inside an airtight plastic covering—with the use of fabric softener sheets. Both logically could be seen as means of defeating drug-detection dogs: fabric softener sheets would attempt to mask the odor of drugs with another scent, while shrink-wrapping would attempt to seal the odor of drugs inside an airtight package.

For the purpose of this legal-sufficiency analysis, we credit the above evidence supporting the forfeiture and disregard contrary evidence. The evidence falls within the zone of reasonable disagreement. Therefore, the evidence is legally sufficient.

### (2) The Evidence Is Factually Insufficient

■ When considering a factual sufficiency challenge, we must consider

---

8. Controversy surrounds the "currency contamination" theory-that at least seventy-five percent of all United States currency has some traces of cocaine contamination. Thus, some courts conclude dog alert evidence is not probative. *See Muhammed v. Drug Enforcement Agency*, 92 F.3d 648 (8th Cir.1996); *United States v. $5,000 in U.S. Currency*, 40 F.3d 846 (6th Cir.1994). Other courts have recently found that a properly trained drug detection dog will alert on only methyl benzoate, a cocaine component that evaporates rapidly from the surface of paper currency. *See United States v. Funds in the Amount of $30,670.00*, 403 F.3d 448, 455–60 (7th Cir. 2005). Some courts require the State to show a "sophisticated dog alert," an alert resulting from a drug detection dog trained to alert, not on just any cocaine residue, but only on the odor of methyl benzoate. *See In re Sumareh v. Doe (In re $80,045.00 in United States Currency)*, 161 Fed.Appx. 670, 671 (9th Cir.2006); *United States v. $22,474.00 in United States Currency*, 246 F.3d 1212, 1216 (9th Cir.2001). The issues now before us do not require us to take a position in that debate.

and weigh all of the evidence, not just that evidence which supports the verdict. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex.1998). The trial court's findings of fact have the same force and dignity as a jury's verdict on jury questions, and are reviewed for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a jury question. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996); *City of Hughes Springs v. Hughes Springs Volunteer Ambulance Serv.*, 223 S.W.3d 707, 716 (Tex.App.–Texarkana 2007, no pet.). A court of appeals must consider and weigh all of the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex.2001) (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986)).

██ "[W]hen circumstantial evidence of a vital fact is meager, a reviewing court must consider not just favorable but all the circumstantial evidence, and competing inferences as well." *Wilson*, 168 S.W.3d at 814. While it is true that the evidence before the trial court supports an inference that the money may have been in close proximity to narcotics, it does little more and is entirely circumstantial.

██ The only pieces of evidence affirmatively connecting the cash and illegal drugs are the alerts of a drug dog on the exterior of the truck and at the bottom of a trash can under which some wrappings from the money had been placed. That is some evidence of a connection between the cash and illegal drugs. *See State v. $11,014.00*, 820 S.W.2d 783, 785 (Tex.1991). Of course, simply possessing and hiding a quantity of cash is insufficient to prove money laundering. *See Cuellar v. United States*, —— U.S. ——, 128 S.Ct. 1994, 2003, 170 L.Ed.2d 942 (2008). The evidence here provides a quite attenuated connection between the cash and illegal substances. In fact, the rest of the State's evidence is entirely circumstantial and provides mere suspicious circumstances. The question becomes how to evaluate the sufficiency of the evidence on this specific record. When evaluating the factual sufficiency of the evidence, we cannot ignore the evidence that Manuel had access to millions of dollars and testified that he chose to carry cash with him to Little Rock to buy a house. Manuel testified he had previously purchased a house with cash.

While the trial court was able to view the witnesses and judge their credibility, Manuel presented strong factual evidence explaining the presence of the large sum of cash. That evidence showed he had received a multi-million-dollar wrongful death settlement after his son died in a house fire. That claim was corroborated with documentary evidence.

In a newspaper article reporting on the fire in which his son died, Manuel was quoted saying that he did not believe in banks and that he had lost several thousand dollars in cash in the fire. When the State cross-examined Manuel on the wisdom of previously keeping cash on hand and his continuation of the practice, he explained that he could not control "things that God does," but that he now owned a fireproof box.

██ On the State's side of the case, the dog alert on the bottom of a trash can is subject to a few difficulties. The steps used in handling the wrappings and, more specifically, in how some of those wrappings may have come to be under the

trash can on which the drug dog alerted, were not proven in an ideal way. Crooks, the officer who conducted the traffic stop and arrested Heron and Espinoza, testified that he took the wrappings off the money and later hid those wrappings at the DPS station; Lubbe, the "seizing officer" in the case, did *not* confirm that Crooks or Lubbe put the wrappings under the trash can; and Beasley, handling the drug dog, said he was *told* the wrappings under the can had come from the money. "Evidence that is so slight as to make any inference a guess is in legal effect no evidence." *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 601 (Tex.2004), *citing Lozano v. Lozano,* 52 S.W.3d 141, 148 (Tex.2001). While we are not concluding that the trash-can-sniff evidence is no evidence, we are charged with crediting only the evidence that is in the record, not facts that are not proven but only surmised. This evidence is weakened by the relatively loose connections in the way it was presented.

 Possession of a large sum of money is not illegal in and of itself. *$27,920.00 in U.S. Currency v. State,* 37 S.W.3d 533, 535 (Tex.App.–Texarkana 2001, pet. denied); *see also $136,205.00 v. State,* 848 S.W.2d 888, 891 (Tex.App.–Houston [14th Dist.] 1993, no writ) (despite evidence of marihuana, drug paraphernalia, and large amount of cash at residence, positive dog alert on safety deposit box at bank was insufficient to connect deposit-box funds to marihuana confiscated at residence).

Since the evidence supporting the forfeiture is entirely circumstantial and attenuated, we are to consider not only the competing evidence, but the "competing inferences," those militating against forfeiture. *See Wilson,* 168 S.W.3d at 814.

Beyond allegedly inconclusive evidence, the State relied on the drug dog's indications. But a drug dog's alert is just probable cause to continue investigating, not conclusive proof the money has been exposed to a controlled substance—even if the dog had actually alerted on the money itself, rather than on a vehicle and on a location where wrappings from the money had been placed. We find informative a case from Minnesota pointing out the inadequacies of drug dog indications, which pointed out (a) the subjectivity of interpreting the drug dog's alert, (b) the subjectivity of the dog, and (c) the inability to cross-examine the dog. *See Jacobson v. $55,900,* 728 N.W.2d 510 (Minn.2007).

When considering the relatively weak evidence in favor of forfeiture in light of the evidence against it, we conclude the evidence is factually insufficient[9] to demonstrate a substantial nexus between the money seized and criminal activity. *See $11,014.00,* 820 S.W.2d at 784; *$56,700 in U.S. Currency v. State,* 730 S.W.2d 659 (Tex.1987). We also heed the Texas Supreme Court's recent cautions regarding evidence so meager as to support conflicting inferences. *See Kroger Tex. Ltd. P'ship v. Suberu,* 216 S.W.3d 788, 795 (Tex.2006).

For that reason, though we find the evidence legally sufficient to support the trial court's judgment of forfeiture, we find the evidence factually insufficient to support it. We reverse the judgment and remand this case to the trial court for a new trial.

---

**9.** In another forfeiture case we are deciding at this time, *$43,774.00 v. State,* 266 S.W.3d 178, (Tex.App.–Texarkana 2008), we find the evidence factually sufficient to support a forfeiture. In that case, the evidence tending to controvert the forfeited property's nexus with illegal activity was significantly weaker and not documented in nearly the same way as the evidence in this case.