**Opinion filed December 31, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00306-CV

_____

**0.089 ACRES OF LAND BLK: 015, LOT: 012, ADDN: SUPERIOR SEC 3 PHYSICALLY LOCATED AT 3607 TAMPICO DR., MIDLAND, TEXAS, MIDLAND COUNTY, TEXAS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 441st District Court**

**Midland County, Texas**

**Trial Court Cause No. CV48824**

**M E M O R A N D U M   O P I N I O N**

This is a forfeiture case under Chapter 59 of the Texas Code of Criminal Procedure. After the trial court conducted a hearing on the State's amended notice of seizure and intended forfeiture, it forfeited "any and all interest of Robert Jason Parks, in the 0.089 ACRES OF LAND AND IMPROVEMENTS LOCATED AT 3607 TAMPICO DR. MIDLAND, TEXAS BLK: 015, LOT 012, ADDN: SUPERIOR SEC 3 MIDLAND COUNTY, TEXAS" to the State of Texas, namely

the "Midland County District Attorney, as agent of the State of Texas." The trial court also held that **"[a]ll title in 0.089 ACRES OF LAND AND IMPROVEMENTS LOCATED AT 3607 TAMPICO DR. MIDLAND, TEXAS BLK: 015, LOT 012, ADDN: SUPERIOR SEC 3 MIDLAND COUNTY, TEXAS is perfected in the Midland County District Attorney**." We affirm.

Robert J. Cooper created a spendthrift trust for the benefit of his grandson, Robert Jason Parks. Cooper named Ruth Ann Hughes, Cooper's daughter, as trustee. Ruth, who is Parks's mother, was to administer the trust for Parks's benefit, and any balance that remained in the trust at Parks's death was to be distributed in equal shares to Ruth Ann Hughes and Cooper's granddaughter, free of any trust.

In accordance with the powers given to her as trustee of the Parks trust, Ruth purchased a home located at 3607 Tampico Drive in Midland. She purchased the property with money exclusively from the Parks trust and bought it so that Parks would have a place to live—a place that would be conducive to successful monitoring of his diabetes. Ruth also testified that she bought the property for Parks to live in because she did not think that a thirty-year-old man should be living with his parents. According to Ruth, Parks's credit history was such that he could not lease an apartment. Further, Ruth thought that the house would be a good investment property for the trust. The trust not only bought the property, it also furnished the house, maintained the property, and paid taxes on it. Parks moved into the house on February 11, 2011. Others who lived with Parks from time to time paid varying amounts to the trust, and Ruth used those sporadically paid funds to cover miscellaneous costs—such as homeowners' association fees—associated with the property.

Subsequently, as personnel with the Midland Police Department were engaged in an investigation of a heroin distribution ring, Parks and his friend Charles Pittman were identified as persons who were mid-level heroin distributors in the

2

organization. Parks and Pittman lived in the Tampico Drive house at the time of the investigation.

Ed Marker, a detective with the Midland Police Department, testified that the investigation revealed that Parks and Pittman were involved in the distribution ring and that the Tampico Drive house was the base for their mid-level heroin operation. Multiple controlled buys made by cooperating individuals confirmed the fact that the property was connected to the sale of heroin. A subsequent search of the property, pursuant to a warrant, resulted in the recovery of penny scales, foil, and plastic. All of those items are items like those that drug dealers use for weighing and packaging illegal drugs. The packaging was like that used to package the drugs that the cooperating individuals had purchased from Parks and Pittman. The police also found a knife on the property; it field-tested positive for heroin.

Law enforcement personnel arrested Parks and Pittman. Among other things, federal authorities charged them with conspiracy to distribute more than 100 grams of heroin. Parks pleaded guilty to one count of conspiracy to distribute and to possess with intent to distribute 100 grams or more of heroin. The federal court sentenced Parks to serve eighty-seven months in prison.

Meanwhile, the State filed, and later amended, a notice of seizure and intent to forfeit the Tampico Drive property. After Ruth had answered in the forfeiture proceeding, her health deteriorated such that she resigned as trustee and appointed her husband, James L. Hughes, as trustee, and he continued in the lawsuit as trustee. After a subsequent bench trial, the trial court forfeited the Tampico Drive property to the State.

At no time during these proceedings did Ruth or James represent Parks. They appeared only as trustees of the trust. Parks had his own attorney, and Parks did not appeal from the judgment of the trial court. The only appellant, therefore, is the trust.

In the first issue on appeal, James argues, on behalf of the trust, that the trial court erred when it failed to apply Arizona law to the facts of this case because the trust was created in Arizona and contained a choice-of-law provision. In the second, third, and fourth issues on appeal, James makes some very sophisticated arguments about special needs trusts, various other types of trusts, and remainderman involvement. In the fifth issue on appeal, James asserts that the evidence was legally and factually insufficient to support the trial court's negative finding as to the affirmative defense of "innocent owner."

Chapter 59 of the Texas Code of Criminal Procedure governs proceedings to forfeit contraband. Property that is contraband is subject to forfeiture and seizure by the State. TEX. CODE CRIM. PRO. ANN. art. 59.02(a) (West Supp. 2015). "Contraband" is "property of any nature, including real" property that is used in the commission of the crimes referenced in Article 59.01(2). *Id.* art. 59.01(2). Possession of a controlled substance with intent to deliver is one of those crimes.

The State commences forfeiture proceedings when it files a notice of the seizure and intended forfeiture with the clerk of the district court in the county where the seizure is made. *Id.* art. 59.04(b). In the case of real property, the State must also file a lis pendens notice with the county clerk of each county where the property is located. *Id.* art. 59.04(g).

Article 59.05(b) provides that the trial court is to conduct forfeiture cases the same as it does other civil cases. *Id.* art. 59.05(b) (West 2006). The State has the burden to prove by a preponderance of the evidence that the property was subject to forfeiture. *Id.* Therefore, the State had to prove by a preponderance of the evidence that the property on Tampico Drive was contraband. In other words, it had to show that the Tampico Drive property was used in the commission of a crime that is listed in Article 59.01(2).

4

Additionally, the State must show that probable cause existed for seizing the property. *See Fifty-Six Thousand Seven Hundred Dollars in U.S. Currency v. State*, 730 S.W.2d 659, 661 (Tex. 1987). In forfeiture cases, probable cause exists when there is a reasonable belief that there is a substantial connection between the property to be forfeited and the criminal activity set out in Chapter 59. *Id.*

There has been no real argument at trial or on appeal as to whether Parks and Pittman used the Tampico Drive property for their heroin distribution business. Nevertheless, for context, we have reviewed the evidence and hold that it supports a reasonable belief that there was a substantial connection between the Tampico Drive property and delivery of heroin and that probable cause existed for seizing the property.

As we have indicated, Detective Marker testified at trial that Parks's name came up during the course of an investigation into a heroin distribution organization. Parks and Pittman were thought to be mid-range persons in the heroin distribution organization. These beliefs proved to be well-founded after cooperating sources made several heroin purchases either at the Tampico Drive property or at other locations shortly after Parks and Pittman left the Tampico Drive property and drove to those other locations.

Further, Detective Marker also testified that inside the Tampico Drive property, officers found packaging materials similar to the materials used to package the heroin that they had been buying through the cooperating sources. The police also found a set of scales like those used to weigh quantities of controlled substances. Additionally, inside the house on Tampico Drive, officers found a knife that contained heroin residue.

Finally, we again note that, as a result of the investigation, Parks pleaded guilty in federal court to conspiracy to distribute and to possess with intent to distribute 100 grams or more of heroin. We believe that the evidence supports a

5

reasonable belief that there was a substantial connection between the Tampico Drive property and criminal activity as set out in Chapter 59.

In the first issue on appeal, James argues that the trial court erred when it did not apply Arizona law to the trust. At trial, James's counsel took issue with the fact that that State had neither pleaded nor shown that the trust was invalid. Counsel remarked that he did not know whether the "Court could even say it is or isn't under Arizona law." The trial court responded: "Well, I would assume that Arizona law is the same as Texas law unless you told me it's different." To which James's lawyer observed: "Who knows? And I'm not saying that it isn't, Judge." James has waived his complaint that a different result would be required under Arizona law. *See Ogletree v. Crates*, 363 S.W.2d 431, 435 (Tex. 1963) (When no proof of another state's law is introduced to the trial court and no request is made to take judicial notice of that law, the other state's law is presumed to be the same as the law in this state.); s*ee also* TEX. R. EVID. 202. We overrule the first issue on appeal.

In sophistication, James's arguments on appeal are well beyond the arguments that he presented to the trial court. Because the issues on appeal are different from those raised in the trial court, they are waived. *See* TEX. R. APP. P. 33.1. However, to the extent that James, in the second, third, and fourth issues on appeal complains of the failure of the State to prove who or what entity owned the Tampico Drive property, we hold that the State was not required to prove ownership. The State's burden was twofold: to prove by a preponderance of the evidence (1) that the property on Tampico Drive was contraband in that it was used in the commission of a crime that is listed in Article 59.01(2) and (2) that probable cause existed for seizing the property. *See Fifty-Six Thousand Seven Hundred Dollars*, 730 S.W.2d at 661. Even if that were not true, a beneficiary of a valid trust is the owner of the equitable or beneficial title to the trust property and is considered the "real" owner of trust property. *City of Mesquite v. Malouf*, 553 S.W.2d 639, 644 (Tex. Civ.

6

App.—Texarkana 1977, writ ref'd n.r.e.). We overrule the second, third, and fourth issues on appeal.

In the fifth issue on appeal, James argues that the trial court erred when it found that the trust was not an "innocent owner." That a party is an "innocent owner" is an affirmative defense under Chapter 59. The burden of proof was upon the trust to prove that defense by a preponderance of the evidence. CRIM. PROC. art. 59.02(c). The burden was to prove that the trust acquired an ownership interest in the real property before a lis pendens was filed and that the trust did not know or should not reasonably have known, at or before the time of acquiring the ownership interest, of the acts giving rise to the forfeiture or that the acts were likely to occur. *Id.* at 59.02(c)(1).

If a party attacks the legal sufficiency of an adverse finding on an issue on which it had the burden of proof, that party must show that the evidence established, as a matter of law, all vital facts in support of that issue. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989). When we review a "matter of law" challenge, we must first examine the record for evidence that supports the finding and ignore all evidence to the contrary. *Id.* If we find that there is no evidence to support the finding, then we will examine the entire record to determine whether the contrary proposition is established as a matter of law. *Id.* The point of error should be sustained only if the contrary proposition is conclusively established. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983).

When a party attacks the factual sufficiency of an adverse finding on an issue on which it had the burden of proof, that party must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Id.* As an intermediate reviewing court, we must consider and weigh all of the evidence, and we will set aside a verdict only if the evidence is so weak, or the finding is so against

7

the great weight and preponderance of the evidence, that it is clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

Ruth testified that she did not know that Parks was using heroin or that he had distributed heroin. She first learned that Parks had been arrested on the distribution charges the day after the arrest. However, at the time the trust purchased the Tampico Drive property, she knew that in 2010 Parks had pleaded guilty in Oklahoma to possession with intent to distribute nine pounds of marihuana.

Parks lived in the Tampico Drive property from February 11, 2011, until the date that the State seized the property in May 2012. During that time, the trust paid for almost all of the costs there. Parks had roommates at times, and those roommates paid a total of around $2,800 "for utilities from 2011, 2012." Otherwise, Parks lived at the Tampico Drive address and paid none of the costs. Ruth testified that Parks had "brittle" diabetes, which affected his entire body, including his organs, and his ability to take care of himself or to manage his property. There is no evidence in the record that Parks was employed.

The trust acquired an ownership interest in the Tampico Drive property before a lis pendens was filed. However, we believe that the evidence fails to conclusively show that Ruth, as trustee, did not know or should not reasonably have known, prior to the time that the trust acquired the property, that it was likely that the property would be used for illegal purposes. *See* CRIM. PROC. art. 59.02(c)(1). The evidence is therefore legally sufficient to support the trial court's failure to find that the trust was an innocent owner of the Tampico Drive property.

We have reviewed all of the evidence as outlined above and hold that the trial court's failure to find that the trust was an innocent owner of the Tampico Drive property is not against the great weight and preponderance of the evidence. The evidence is therefore factually sufficient.

The trust had the burden of proof on its claim that it was an innocent owner of the premises; the trust failed to meet that burden. We overrule the fifth issue on appeal.

We affirm the judgment of the trial court.


JIM R. WRIGHT

CHIEF JUSTICE


December 31, 2015

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.