**Reversed and Rendered in Part, Reversed and Remanded in Part, and Majority and Concurring Opinions filed November 24, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00385-CV

### APPROXIMATELY $31,421.00, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 157th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2012-13933**

## M A J O R I T Y   O P I N I O N

This is an appeal from a final judgment to seize money from Fredi Azuara Enriquez.[1] In four issues, Enriquez challenges the sufficiency of the evidence and

---

[1] *See* Tex. Code Crim. Proc. arts. 59.01-.14. In forfeiture proceedings, the defendant is the seized property, but the complaining party on appeal, the claimant, is the person from whom the property was seized. *See id*. art. 59.04(j); *see also State v. $217,590.00 in U.S. Currency*, 18 S.W.3d 631, 632 (Tex. 2000).

complains of jury charge error and violations of his constitutional rights. Because we hold that the evidence is legally insufficient to support the jury's finding on contraband, we reverse the trial court's judgment, render judgment ordering the State to return the seized proceeds to Enriquez, and remand for proceedings consistent with this opinion.

## *Background*

Enriquez and another individual disembarked in Houston from a bus arriving from Atlanta, Georgia. Two officers who were monitoring the bus terminal for drug or drug money couriers became suspicious of Enriquez and the other individual. The officers testified that Enriquez acted as if he were looking around for police when he got off the bus. He subsequently clutched his bag to his chest and walked to the bathroom with his head down, which the officers took as an indication that he was trying to avoid them. When he came out, he sat next to someone in the waiting area and started a conversation with him. One officer thought that odd because if Houston were Enriquez's destination, he probably would have gotten into a cab or had someone there to pick him up. The other officer also testified that Enriquez was extremely nervous, shaking his leg up and down. At that point, the officers decided to approach and question him.

Enriquez told the officers that he was traveling from Atlanta to Houston to meet a friend. One officer asked him for his identification and bus ticket. The names on his identification and bus ticket did not match. The officer asked Enriquez if he had any luggage and for permission to search it. After Enriquez consented to a search of his bag, the officers discovered bundles of money totaling approximately $31,421 in a zippered pocket at the bottom of the bag.[2] The money

---

[2] Enriquez's counsel asked the testifying officer about the pocket, "This is out in the open. If you just looked at the bag you would see it." The officer responded, "Yeah."

was seized as proceeds gained from commission of a felony offense.[3]

The State filed a notice of seizure and forfeiture against the money. At trial, the court instructed the jury to consider whether the officers had probable cause to seize the money and whether it was contraband. The jury answered "yes" to both questions.

## *Discussion*

In his second issue, Enriquez challenges the sufficiency of the evidence to support the jury's finding that the seized money is contraband.[4] Enriquez argues the finding is not supported by legally sufficient evidence because there was no evidence that any drug deal actually occurred and a drug detection dog alerted only to Enriquez's bag, not the money, which merely gives rise to a suspicion that narcotics had been in or around the bag. Enriquez asserts that any drug offense would have occurred outside Texas, and the State was limited by the charge to proving (1) delivery or possession of a controlled substance in Texas, (2) delivery of marijuana in Texas, or (3) money laundering related to one of these Texas offenses at the felony level.[5] Because we conclude that the State did not present evidence that the money was used or intended to be used in or derived from the commission of any offense, we need not decide whether the State was limited to

---

[3] Enriquez was arrested and charged with money laundering, but a grand jury no-billed the charges.

[4] Enriquez also complains in his first, third, and fourth issues that the (1) trial court erroneously submitted a broad-form jury charge question that commingled valid and invalid theories of liability; (2) evidence is legally and factually insufficient to support the jury's findings that the State had probable cause to seize the money; and (3) forfeiture of property without showing that a crime was committed is unconstitutional. Because of our disposition of the case under issue two, we need not address appellant's remaining issues. *See Regan v. Lee*, 879 S.W.2d 133, 137 (Tex. App.—Houston [14th Dist.] 1994, no writ).

[5] Enriquez argues that the State was so limited because the jury was not instructed on the elements of any federal felonies to support a finding of money laundering.

proving the money was connected to a Texas offense.

Enriquez also argues broadly that there is legally insufficient evidence that the money was tied to specific criminal activity. We agree.

When reviewing for legal sufficiency, we consider the evidence in the light most favorable to the finding and indulge every reasonable inference that supports the challenged finding. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* at 827. We will conclude that the evidence is legally insufficient to support the finding only if (1) there is a complete absence of evidence of a vital fact, (2) we are barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810.

As set forth above, property, including money, is subject to seizure and forfeiture if it is found to be contraband. Tex. Code Crim. Proc. art. 59.02(a). Contraband is property used or intended to be used in the commission of certain felonies or proceeds derived from those felonies. *Id*. art. 59.01(2)(A)-(D). Conviction of an underlying felony is not required under the forfeiture statute. *Id*. art. 59.05(d). However, the State must prove by a preponderance of the evidence that the seized currency was subject to forfeiture. *$7,058.84 in U.S. Currency v. State*, 30 S.W.3d 580, 586 (Tex. App.—Texarkana 2000, no pet.). The proof may be made by circumstantial evidence. *Id*. When relying on circumstantial evidence, the State must offer evidence that raises more than a mere surmise or suspicion regarding the source of the money. *Id*. However, the State is not required to exclude every possible means by which Enriquez might have acquired the money.

4

*See id*. The factfinder may draw any and all reasonable inferences from the circumstances shown by the evidence. *Id*.

The jury was required to determine whether the seized property is contraband in accordance with the charge as given. *See Dryzer v. Bundren*, No. 07-12-00167-CV, 2014 WL 1856849, at *4 (Tex. App.—Amarillo May 6, 2014, pet. denied) (mem. op.) ("[T]he court's instructions become the law of the case and are to be accepted by the jury as the guide on which they must rely."); *Wal-Mart Stores, Inc. v. Middleton*, 982 S.W.2d 468, 471 (Tex. App.—San Antonio 1998, pet. denied) (same). Thus, we measure the sufficiency of the evidence to support the jury's finding using the charge given when the opposing party does not object to the charge.[6] *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000); *First Bank v. DTSG, Ltd.*, No. 14-13-00694-CV, 2015 WL 3462279, at *13 (Tex. App.—Houston [14th Dist.] May 28, 2015, no pet. h.).

To prove that the money was contraband based on the offenses submitted to the jury, the State had to prove that it was (1) used or intended to be used in the felony delivery or possession of a controlled substance or delivery of marijuana; (2) the proceeds gained or acquired from the felony delivery or possession of a controlled substance or delivery of marijuana; or (3) used or intended to be used in money laundering. A person commits the felony offense of delivery or possession of a controlled substance "if the person knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance in Penalty Group 1."[7] Tex. Health & Safety Code § 481.112. A person commits the felony offense of delivery

---

[6] Enriquez objected to language in the charge referencing federal felonies. However, he argues on appeal that the jury was limited by the charge to consider the offenses submitted. The State did not object to the charge.

[7] Penalty Group 1 is a list of numerous controlled substances that are not pertinent to our analysis. Tex. Health & Safety Code § 481.102.

of marijuana "if the person knowingly or intentionally delivers" more than one-fourth of an ounce. *Id*. § 481.120. For conduct to constitute money laundering, the money must be the proceeds of "criminal activity," which the charge defined as any state or federal felony offense. Tex. Pen. Code § 34.02. We note that the jury was not instructed as to the definition of any state or federal felony other than the above quoted Health and Safety Code violations. The State did not submit an instruction on any specific federal felony or argue that a specific federal felony was committed.

No direct evidence was presented at trial connecting the money to the delivery or possession of a controlled substance or marijuana or money laundering. Therefore, the State was required to present sufficient circumstantial evidence showing that it is more reasonably probable than not that the money was used or intended to be used in or was the proceeds of one of the Health and Safety Code violations quoted above. *See $7,058.84*, 30 S.W.3d at 586. Courts have reviewed several factors in assessing the sufficiency of the evidence in a forfeiture case: (1) the proximity of the money to the drugs and to evidence of drug trafficking; (2) evidence the money was previously in contact with drugs; (3) suspicious activity consistent with drug trafficking; (4) the amount of money at issue; and (5) the presence of expert testimony indicating there was probable cause to seize the property subject to forfeiture, e.g., that a substantial connection exists between the property to be forfeited and the criminal activity. *$43,774.00 U.S. Currency v. State*, 266 S.W.3d 178, 186 (Tex. App.—Texarkana 2008, pet. denied); *see also $47,200.00 v. State*, 883 S.W.2d 302, 309 (Tex. App.—El Paso 1994, writ denied) (noting State is required to prove source of money through a balance of probabilities).[8]

---

[8] Our research has not revealed any cases that analyze the sufficiency of the evidence

As noted by the Court of Criminal Appeals, the following types of evidence have been considered to show a nexus between money and drug trafficking in forfeiture and money laundering cases: a denial of knowledge of the money, a narcotics-dog alert on the money, the amount of the money, the packaging of the money, the secret storage of the money, the presence of illegal drugs, and the presence of records of drug transactions. *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014) (citations omitted). Somewhat more controversially, courts have relied on travel along a known drug route and courier profile evidence. *Id*. at 625-26. Although concealed movement of money is an integral part of drug trafficking, the sum total of incriminating facts determines whether the factfinder may find a nexus between money and drug trafficking. *See id*. at 626.

The Northern District of Texas has noted that drug-related forfeitures can be divided into three categories: (1) close proximity cases when officers find the property with illegal drugs or determine through investigation that it is very closely related to illegal drug dealing; (2) cases relying on less persuasive evidence that is sufficient under the totality of the circumstances; and (3) cases improperly relying on mere suspicion. *United States v. $80,760.00 in U.S. Currency*, 781 F. Supp. 462, 472-73 (N.D. Tex. 1991), *aff'd*, 978 F.2d 709 (5th Cir. 1992). The State may not seize property based on mere suspicion. *See $43,774.00*, 266 S.W.3d at 187.

In the first category, which is the most compelling case for forfeiture, law enforcement finds the property in close proximity to narcotics or determines through investigation that it is clearly forfeitable. *$80,760.00*, 781 F. Supp. at 473. Law enforcement officers demonstrate this proximity through surveillance,

only as to the finding that the seized assets were contraband, as we do here, without also analyzing the sufficiency of the evidence of probable cause. We note that the analysis of "substantial connection" (as an element of probable cause) is not exactly the same as the analysis of the use, intended use, or proceeds elements of the definition of contraband. However, the concepts are analogous, so the substantial connection cases are helpful to our analysis.

undercover purchases, execution of valid search warrants, arrests, guilty pleas, and convictions for narcotics offenses. *Id*. at 473-74 (citations omitted). In each of these situations, there is an underlying investigation that substantiates the government's burden. *Id*. In the second category of cases, corroboration of an informant's tip, testimony of witnesses, presence of drug paraphernalia, use of an alias in a deliberate attempt to deceive law enforcement, discovery of records documenting drug transactions, and admissions have all been persuasive factors. *Id*. The third category of cases lacks the requisite showing by the State of a substantial connection between the property to be forfeited and criminal activity. *See $47,200.00*, 883 S.W.2d at 306 ("Without a showing of a substantial connection between the property to be forfeited and the statutorily defined criminal activity that establishes the required probable cause, the State lacks authority to seize a person's property."); *see also $80,760.00*, 781 F. Supp. at 474.[9] These cases involve evidence in which there *may* be a connection between currency and some illegal activity, but do not give rise to the substantial connection necessary for forfeiture. *$80,760.00*, 781 F. Supp. at 474.

**Proximity of Money to Drugs and to Evidence of Drug Trafficking**. The State argues the money was found in close proximity to evidence of drug trafficking because of the way it was bundled in cellophane and duct tape and concealed in Enriquez's bag. Officers testified this method of wrapping currency is typically used by drug dealers and couriers to prevent police dogs from smelling the odor of narcotics on the money. Some courts have found that wrapping cash in cellophane-type material may be used to conceal the smell of drugs and avoid

---

[9] In *$47,200.00*, the court concluded that the State's circumstantial evidence was sufficient to support the trial court's finding that seized money was the proceeds from the commission of a felony because, among other things, the respondents were involved in the transportation of large amounts of marijuana and had large amounts of marijuana and marijuana paraphernalia in the home where the money was seized. 883 S.W.2d at 309.

8

detection by drug detection dogs. *$43,774.00*, 266 S.W.3d at 186 (citations omitted). However, this fact is of limited probative value in determining whether the money was used in drug trafficking. *See id.*[10]

The State further contends the money was intentionally concealed because it was inside a part of the bag not designed to store personal items. Simply possessing and hiding a quantity of cash is insufficient to show a connection between cash and illegal drugs. *$130,510.00 in U.S. Lawful Currency v. State*, 266 S.W.3d 169, 176 (Tex. App.—Texarkana 2008, pet. denied); *see also Cuellar v. United States*, 553 U.S. 550, 563 (2008) ("[M]erely hiding funds during transportation is not sufficient to violate the [federal money laundering] statute, even if substantial efforts have been expended to conceal the money."). The State likens this situation to hiding the money in a "hidden compartment." *Cf. $43,774.00*, 266 S.W.3d at 180, 187 (noting money was stored in compartment in car "installed for the purpose of secreting items"). The money in this case, however, was in an outside zippered pocket at the bottom of the bag.[11] Simply placing cash inside luggage to keep it safe when traveling does not support a connection to a drug crime.

**Previous Contact with Drugs**. The State asserts that the alert from its police dog, Diego, to the bag is some evidence that the money had recently been near a large amount of narcotics. However, Diego's handler conceded that Diego's

---

[10] The court in *$43,744.00* noted that wrapping cash in cellophane has "some probative value" but "does not prove a connection to drug trafficking." 266 S.W.3d at 186. The court concluded that the evidence of a compartment installed inside a car "for the purpose of secreting items, together with [a] positive dog alert on that compartment" supported a finding that the seized money was derived from or intended for use in distribution or possession of a controlled substance. *Id.* at 186-87.

[11] Enriquez's counsel asked the testifying officer, "This is the zipper out in plain view. This isn't one of those trick briefcases where you lift up and there is a hidden compartment underneath. Is that correct?" The officer responded, "Yeah."

alert did not indicate whether the amount of narcotics would be enough to establish a felony offense and it establishes only a suspicion that narcotics were in or around the bag—the presence of narcotics would need to be verified through further testing. The State did not conduct further testing of the bag or the money. The handler further conceded that Enriquez's bag could have been next to another bag that had narcotics in it, such as another bag in the overhead bin in the bus. Also, despite the State's assertion to the contrary, the record does not indicate whether the money was in the bag when Diego alerted to it.[12] Diego did not alert on the money, and there is no evidence of when or where the bag would have come into contact with illegal substances. *See $136,205.00 (Johnson) v. State*, 848 S.W.2d 888, 891 (Tex. App.—Houston [14th Dist.] 1993, no writ) (holding jury's finding that money in bank safe deposit box was contraband was not supported by factually sufficient evidence when safety deposit box was located "a distance away" from marijuana, despite fact that canine alerted to safety deposit box).

The relevance of a dog alert in the forfeiture context has been the subject of considerable debate. *See $43,774.00*, 266 S.W.3d at 184. Several courts, including this court, have held that a positive alert by a drug detection dog, standing alone, does not constitute evidence that money was used in connection with a drug deal. *See id.* (citing *$80,631.00 v. State*, 861 S.W.2d 10, 12 (Tex. App.—Houston [14th Dist.] 1993, writ denied)) (other citations omitted). But the supreme court has authorized the consideration of a drug dog alert to determine if money found in a search has a substantial connection to criminal activity. *State v. $11,014.00*, 820 S.W.2d 783, 785 (Tex. 1991). In that case, the respondent was arrested in an airport, and the canine alerted both on the respondent's suitcase and directly on the money. *Id.* at 784-85. Here, Diego did not alert on the money. We conclude this

---

[12] Diego's handler testified he did not know if the money was in the bag at the time of the alert.

case is more akin to *$80,631.00*, in which we concluded that a canine alert on a briefcase did not constitute evidence that money was used in connection with a drug deal.[13] 861 S.W.2d at 12.

The State apparently relies on the logic that a violation of the drug laws occurred at some time in the past when the bag came into contact with narcotics or was handled by someone using narcotics. *See $80,760.00*, 781 F. Supp. at 476. There is no evidence that Enriquez caused the bag to come into contact with narcotics. *See id*. Importantly, the State did not seize narcotics from Enriquez; rather, the sole evidence of narcotics came from the scent on the bag.[14] *See id*. This does not establish the money was used or intended to be used in or derived from the commission of any of the offenses submitted to the jury.[15] *See id*.; *see also*

---

[13] We stated, "The fact that the dog alerted to the briefcase, standing alone, does not constitute evidence that the currency was used in connection with a drug deal or criminal investment." *$80,631.00*, 861 S.W.2d at 12. However, we affirmed the trial court's forfeiture finding based on the respondent's admission that he had been involved in a drug deal. *Id*.

[14] Assuming for argument's sake that the money was in the bag when Diego alerted to it, we note that residue from narcotics may contaminate a large portion of the currency in circulation. *See $80,760.00*, 781 F. Supp. at 475. Several federal courts have expressed concern that these alerts are unreliable indicators of a substantial connection with drug trafficking in the forfeiture context. *See, e.g., United States v. $10,700.00 in U.S. Currency*, 258 F.3d 215, 230 (3d Cir. 2001) (noting that "several of our sister circuits recently have called into question the evidentiary significance of a positive reaction to currency in determining whether there is probable cause to forfeit the money in light of studies indicating that a large percentage of United States currency is contaminated with sufficient traces of drug residue to cause a canine to 'alert' to it"); *United States v. $5,000 in U.S. Currency*, 40 F.3d 846, 849 (6th Cir. 1994) (finding "the evidentiary value of the narcotics dog's alert to be minimal" in light of evidence regarding narcotics contamination of currency); *United States v. U.S. Currency, $30,060.00, 39* F.3d 1039, 1043 (9th Cir. 1994) (finding that in light of currency contamination, "the continued reliance of courts and law enforcement officers on [a dog alert] to separate 'legitimate' currency from 'drug-connected' currency is logically indefensible"). Diego's handler testified, "[d]epending upon the potency level of the narcotic depends on how long it's going to take to dissipate."

[15] We acknowledge that we held in *$136,205.00*, 848 S.W.2d at 891, and the Texarkana Court of Appeals held in *$130,510.00*, 266 S.W.3d at 175, that a canine alert was sufficient to overcome a legal sufficiency challenge. However, in the first case, a large amount of marijuana and drug paraphernalia were found in the respondent's house. *$136,205.00*, 848 S.W.2d at 890. In the second case, both respondents had prior criminal records for possession of large amounts

*Deschenes v. State*, 253 S.W.3d 374, 384 n.19 (Tex. App.—Amarillo 2008, pet. ref'd) ("A positive alert by a drug detection dog, standing alone, does not constitute evidence that money was used in connection with a drug deal."). We may not credit evidence of facts that are not proven but only surmised. *See $130,510.00*, 266 S.W.3d at 177.

**Suspicious Activity Consistent with Drug Trafficking**. Enriquez did not offer any explanation regarding the money. He was traveling on the same bus sitting next to another man who was transporting money wrapped and concealed in the same way in a similar amount and similar denominations. Both men were carrying bus tickets that had different names from the names on their identifications, but there is no evidence that the men misrepresented their identities to the officers. The State contends that this activity is consistent with that of a drug trafficker. Drug courier profile characteristics are of little value in the forfeiture context, however, without other persuasive evidence establishing that the money was used in or intended to be used in or constituted proceeds of delivering drugs.[16] *$80,760.00*, 781 F. Supp. at 475 ("[Drug courier] profile characteristics 'describe a very large category of presumably innocent travelers, who would be subject to virtually random seizures were the court to conclude that as little foundation as [the profile characteristics] could justify a seizure.'" (quoting *Reid v. Georgia*, 448 U.S. 438, 441 (1980)); *see also Deschenes*, 253 S.W.3d at 385 ("The mere fact that a person's actions match a drug courier profile and that person is carrying a large

---

of marijuana. *$130,510.00*, 266 S.W.3d at 175. Here, there is no such evidence. We further note that both courts in the cited cases held that canine alerts were *factually insufficient* evidence to show the money was contraband. *$130,510.00*, 266 S.W.3d at 176-77; *$136,205.00*, 848 S.W.2d at 891.

[16] The trial court overruled Enriquez's objections to testimony regarding drug courier profile characteristics on the basis that this testimony is not relevant, is prejudicial, and involves "character bad acts of others." Enriquez had a running objection to such testimony.

amount of money that might be involved in some illegal activity is insufficient to establish probable cause to justify forfeiture.").

The route the men were traveling was a well-known drug smuggling route, according to the officers. But the evidence that the men were traveling on a certain route and that they were nervous is not probative. *$43,774.00*, 266 S.W.3d at 184; *see also $130,510.00*, 266 S.W.3d at 172 n.5. As our sister court noted regarding officer testimony involving drug corridors:

> [W]e are skeptical that such evidence offers any probative value to support the State's case. In numerous forfeiture cases, we have seen testimony from various officers that a large number of roads in east Texas are "drug corridors" and no suggestion that any east Texas roads are not drug corridors.

*$130,510.00*, 266 S.W.3d at 172 n.5.

Finally, the State argues that appellant acted suspiciously—he was looking around, "creeping away" from officers, and clutching his bag tightly; he began talking to a stranger as if he knew him and acted "[e]xtremely nervous." Suspicious activity is not enough: the behavior must be consistent with drug trafficking. *See $43,774.00*, 266 S.W.3d at 186-87. One of the officers conceded that many of Enriquez's reactions, which related to being nervous around the officers, were equally consistent with innocent behavior.[17] Facts traditionally seen

---

[17] Enriquez's counsel elicited the following testimony on cross-examination:

Q.    If you were holding $31,000 in cash, would you hold your bag tightly?

A.    Probably.

Q.    Okay. Would you leave it on the bus bench when you go to the restroom and leave it alone?

A.    No. . . .

Q.    Is there anything suspicious about . . . making small talk?

A.    No.

as suggesting innocence do not justify a seizure. *See $130,510.00*, 266 S.W.3d at 172 n.5 ("We . . . find it questionable that facts traditionally seen as suggesting innocence become suspicious when the government may be able to confiscate an item of substantial value by recasting such facts.").

**Amount of Money**. Possession of a large sum of money is not illegal. *Id.* at 177; *see also $136,205.00*, 848 S.W.2d at 891; *Deschenes*, 253 S.W.3d at 385 ("The mere fact that a person's actions match a drug courier profile and that person is carrying a large amount of money that might be involved in some illegal activity is insufficient to establish probable cause to justify forfeiture."). Possessing cash is not evidence of money laundering or any other drug offense. *See $130,510.00*, 266 S.W.3d at 176. One of the officers conceded that migrant workers going back to Mexico often carry cash, usually in smaller amounts. We are not persuaded that the possession of $30,000, without other persuasive circumstantial evidence such as

---

Q.   Does that make you a drug courier?

A.   No.

Q.   Okay. And then you said he was stretching and lifting his legs. That was a suspicious sign to you?

A.   Yes, sir.

Q.   And you said it was a day-and-a-half bus ride. You don't think that he would want to stretch his legs out after a . . . bus ride from Atlanta?

A.   [W]ell, yeah. I guess it is a long way, but that's just one of our indicators. . . .

Q.   . . . And then you said . . ., "He was looking around suspicious."

A.   Yes.

Q.   [C]ould it be possible he was looking for his ride or somebody to pick him up?

A.   Probably.

Q.   And is it just as likely he was looking around for his ride as it is that he's a drug courier?

A.   Maybe he was looking for his ride. I don't know.

the presence of drugs or drug paraphernalia, shows that the money was used in or intended to be used in or constituted proceeds of delivering drugs.[18] *See $80,760.00*, 781 F. Supp. at 473 (noting "a large amount of money, *found in combination with other persuasive circumstantial evidence, particularly the presence of drug paraphernalia*, is frequently held sufficient to establish probable cause" (emphasis added)).

**Expert Testimony on Probable Cause to Seize Property**.[19] A "seizure" of property occurs when there is some meaningful interference with an individual's possessory interests in that property. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *Castleberry v. State*, 425 S.W.3d 332, 334 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). This factor examines evidence of the officers' expertise to determine whether there was probable cause to seize the subject property. *See $43,774.00*, 266 S.W.3d at 186.

Probable cause, in the context of civil forfeiture, is "a reasonable belief that a substantial connection exists between the property to be forfeited and the criminal activity defined by the statute." *State v. $90,235*, 390 S.W.3d 289, 293 (Tex. 2013). The officers opined that, in their experience, they believed the money to be derived from drug trafficking based on Enriquez's actions and the canine alert. They, however, made the following concessions:

- Although Enriquez engaged in suspicious behavior that fit the drug

---

[18] The State also argues that because the money included many twenty-dollar bills, it was "connected to and derived from drug trafficking." The only case cited by the State, *United States v. $242,484.00*, 389 F.3d 1149, 1160 (11th Cir. 2004), in support of this argument is distinguishable on its face because it dealt with approximately eight times the amount of money Enriquez was carrying, weighing more than 40 pounds.

[19] This factor, which is related to probable cause, is not strictly necessary to our analysis. However, we include it in our analysis because a connection between the money and criminal activity is relevant in determining whether the State established the money was contraband.

courier profile, many of his actions also were consistent with an innocent person's actions.

- There was no evidence that a drug deal occurred, even though the State's theory at trial was that the money was the proceeds of an unspecified drug deal in Atlanta.

- The pocket in the bag holding the money was not hidden.

- Officers found no drugs in Enriquez's or the other man's bag.

- Migrant workers returning to Mexico often carry cash, although typically a smaller amount.

- The length of time since Enriquez's bag had been near narcotics depended on the potency level of the narcotics, and that could not be determined by Diego's alert on the bag.

- Diego's handler did not know if the money was in the bag when Diego alerted on it.

- The bag recently could have been near another bag that held narcotics.

- The alert does not prove the presence of narcotics, but only establishes a suspicion that narcotics were in or around the bag.

- No tests were performed on the bag or the money, which was necessary to determine whether they had been in the presence of narcotics.

Accordingly, the officer testimony does not establish that the money was used or intended to be used in or derived from the commission of the offenses submitted to the jury. *See $80,760.00*, 781 F. Supp. at 478 ("When the government seeks forfeiture of currency under [federal law] it must do more than recite the drug-courier profile and subject the currency to a narcotics detection dog's sniff test.").

16

*Conclusion*

It is significant that no drugs or drug paraphernalia were found in this case. We note that the cases cited by the State to support its argument that the jury's finding on contraband is supported by legally sufficient evidence either deal with property found near illicit drugs or are otherwise distinguishable.[20] Moreover, Enriquez was not tried for a crime because the grand jury no-billed the charge against him. *See 80,631.00*, 861 S.W.2d at 12-13 (noting the following evidence relied on by the State was "inherently suspicious": respondent was "never charged with the drug deal he allegedly confessed to committing," his confession was not recorded, and officer admitted he could only speculate that currency was derived from drug transaction). This is not a case in which officers found the property along with illegal drugs or determined through investigation that it is very closely related to illegal drug dealing. *See $80,760.00*, 781 F. Supp. at 472-73. Weighing the factors in light of the State's responsibility to present evidence establishing the money was used or intended to be used in or derived from the commission of possession or delivery of drugs or money laundering, we conclude that the evidence is legally insufficient to support the jury's finding on contraband.

We recognize that forfeiture law, as a civil matter, is subject to a lesser standard of proof than criminal law. *See $43,774.00*, 266 S.W.3d at 188; *see also One (1) 2002 Cadillac Deville, VIN 1G6KD54Y42U228530 v. State*, No. 04-12-

---

[20] *See $8,300.00 in U.S. Currency v. State*, No. 05-11-00901-CV, 2012 WL 5359229, at *1 (Tex. App.—Dallas Nov. 1, 2012, no pet.) (mem. op.) (noting officers found marijuana in car where money was discovered); *$43,774.00*, 266 S.W.3d at 187-88 (holding evidence of a secret compartment in car plus canine alert on compartment supported forfeiture but urging supreme court to require more than a canine alert to establish a connection between money and illegal drugs); *Antrim v. State*, 868 S.W.2d 809, 814 (Tex. App.—Austin 1993, no writ) (noting lab tests confirmed presence of marijuana residue in box where money was found); *$11,014.00*, 820 S.W.2d at 785 (finding canine alert on suitcase *and* money to be legally sufficient evidence supporting forfeiture).

00212-CV, 2012 WL 6618198, at *4 (Tex. App.—San Antonio Dec. 19, 2012, no pet.) (mem. op.). However, it is not enough to convince a jury that "something is out of the ordinary"—as the State argued in closing, or that Enriquez was traveling from Atlanta to Houston, with the wrong person, or looked suspicious. *See $130,510.00*, 266 S.W.3d at 177 ("[W]e are charged with crediting only the evidence that is in the record, not facts that are not proven but only surmised."). Even if this evidence could support the jury's finding of probable cause to seize the money, an issue we do not reach, it does not establish the money was used or intended to be used in or derived from the commission of an offense submitted to the jury and thus subject to forfeiture. *See $7,058.84*, 30 S.W.3d at 586 ("[T]o prove that the money was subject to forfeiture for [an offense submitted to the jury], the State must prove that the money was used or intended to be used in the commission of, or was proceeds derived from, the [offense].").

On these facts, we conclude the State did not present evidence establishing that the money was contraband. *See Cadillac Deville*, 2012 WL 6618198, at *4; *see also $80,760.00*, 781 F. Supp. at 473. We sustain Enriquez's second issue as to the complaint that there is legally insufficient evidence to support the jury's finding on contraband. We need not reach Enriquez's factual sufficiency challenge. *See Tukua Investments, LLC v. Spenst*, 413 S.W.3d 786, 802 (Tex. App.—El Paso 2013, pet. denied).

On appeal, Enriquez seeks a judgment recovering the proceeds seized by the State, including pre- and post-judgment interest as allowed by law. Because Enriquez sought that affirmative relief in his answer below, he is entitled to a judgment requiring the State to return the proceeds. *See Megason v. State*, 791 S.W.2d 221, 223-24 (Tex. App.—Corpus Christi 1990, writ denied). We reverse the judgment of the trial court, render judgment ordering the State to return the

18

proceeds to Enriquez, and remand the case to the trial court for proceedings consistent with this opinion.[21] *See id.* at 224.



/s/    Martha Hill Jamison
        Justice


Panel consists of Chief Justice Frost and Justices Jamison and Busby (Frost, C.J., concurring).

---

[21] We note that Enriquez also pleaded in his answer below for interest under article 59.08 of the Code of Criminal Procedure and seeks pre- and post-judgment interest. *See* Tex. Code Crim. Proc. Art. 59.08(b) (requiring money placed in interest bearing account by the attorney representing the State to "be distributed in the same manner as proceeds are distributed"). Although on appeal Enriquez has asked for interest as allowed by law, he has not directed this court to any law that permits or requires the award of interest in this circumstance. Upon remand, the trial court may determine whether Enriquez is entitled to any such interest.