**Opinion issued October 7, 2025.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00818-CV

———————————

**AMEAL WOODS AND JORDAN DAVIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 281st District Court**
**Harris County, Texas**
**Trial Court Case No. 2019-39625**

---

## MEMORANDUM OPINION

This appeal arises from an asset forfeiture proceeding filed by the State of Texas against appellants Ameal Woods and Jordan Davis. TEX. CODE CRIM. PROC. art. 59.02. After a six-day trial, a jury found that there was probable cause to seize

appellants' money and that the money, totaling $41,680.00, was contraband intended to be used in the commission of the possession of a controlled substance.

On appeal, appellants Woods and Davis challenge the sufficiency of the evidence, the denial of an innocent-owner jury instruction, and the constitutionality of the burden of proof in asset forfeiture proceedings. We reverse and render.

## Background

Sergeant Robert Wade and Deputy Elias Sandoval work for the Harris County Sheriff's Office. On May 14, 2019, Sergeant Wade and Deputy Sandoval were working in the Crime Reduction Unit. Between 8:00 and 8:30 a.m., Sergeant Wade and Deputy Sandoval observed Woods following a box truck too closely while in heavy, rush hour traffic on I-10 East. Sergeant Wade, who was driving the patrol vehicle, initiated the traffic stop. Upon making contact with Woods, Sergeant Wade observed that Woods's breathing was slow and labored and that Woods was avoiding eye contact.

Sergeant Wade informed Woods that Sergeant Wade would be issuing a warning, and had Woods exit Woods's vehicle and join Sergeant Wade in the patrol vehicle. Sergeant Wade testified that, when he questioned Woods about his travel plans, Woods would pause and hesitate when asked certain questions. Woods told Sergeant Wade that he was traveling to Katy to visit his nephew and stay for a day or two, but did not know the nephew's address. Woods also told

2

Sergeant Wade that he was considering purchasing a trailer in the Houston area, but had no particular location or area in mind. Sergeant Wade began asking questions about the contents of Woods's vehicle, and Woods admitted to Sergeant Wade that Woods had a large sum of cash, approximately $30,000, in the vehicle. Sergeant Wade asked Woods for consent to search the vehicle, which Woods permitted. Sergeant Wade did not find any trucking magazines or trucking sales literature in the vehicle that might corroborate Woods's stated intent to purchase trucking equipment. Eventually, Sergeant Wade reached the trunk of the vehicle where he located two bundles of cash, wrapped in plastic bags and duct tape. One bag was covered with a substance the deputies identified as "transmission fluid." After finding the money, Sergeant Wade again asked Woods how much money he had. Woods thought about it for a moment and told Sergeant Wade that one bundle was $33,890 and the other bundle was $8,300. Woods told Wade that the money had come from himself, his wife, and a nephew. Woods further explained that his nephew told him to wrap the money so that he did not get robbed. Sergeant Wade called the Harris County District Attorney's Office to consult about the situation. After the phone call, Sergeant Wade chose to investigate further, asking Woods to call his wife to verify the story. When Sergeant Wade spoke with appellant Davis, Woods's wife, she denied knowledge of Woods's traveling with large sums of

money. Sergeant Wade asked Woods for permission to look in his phone, and Woods refused.

While Sergeant Wade searched Woods's vehicle, Deputy Sandoval engaged Woods in "small talk" in front of Sergeant Wade's in-dash camera. Deputy Sandoval's body-worn camera did not capture this conversation, despite department policy requiring him to record such interactions. He testified this was due to an equipment malfunction. Deputy Sandoval testified that, during this conversation, Woods told him that Woods's cousin's boyfriend was "involved in the drug world," and "that [Woods] was being paid to come to Houston with this money because the trucking business was slow back home where he was from." According to Deputy Sandoval, Woods further told Deputy Sandoval that, "[o]nce he arrived to Houston, he was to make a phone call to somebody to get further instructions." Deputy Sandoval's recounting of his interaction and communication with Woods changed from his initial offense report to his testimony at trial, initially omitting Woods's reference to a phone call for instructions.

Sergeant Wade and Deputy Sandoval proceeded to a police substation for a narcotics-trained canine unit to conduct a sniff search of the seized money and to count the money. According to the police officers' count, there was $600 less in the bundles of cash than appellant estimated. Despite department policy requiring

4

officers to record the counting of money, Sergeant Wade and Deputy Sandoval did not do so.

Deputy Larry Graves works at the Harris County Sheriff's Office as a canine handler. His canine, "Dark," was trained to detect cocaine, marijuana, methamphetamine, 3,4-methylenedioxymethamphetamine (MDMA), and heroin. When Dark locates one of those odors, he alerts Deputy Graves by sitting. Dark is also trained to detect residual odors on items that have been in contact with one of those five substances. Dark is not trained to alert to the odor of currency. On May 14, 2019, Deputy Graves and Dark responded to a call for service at the police substation where Sergeant Wade and Deputy Sandoval brought the seized cash. Dark searched a room where the seized cash was hidden and alerted upon locating the hidden cash.

Woods testified at trial. According to Woods, of the $41,680 that he was transporting on May 14, 2019, "[a] little over $6,000, $6,500" belonged to Davis. Eight thousand dollars of the money belonged to Woods's brother, Alonzo Woods. Woods claimed that his niece, Tameka Woods Pinder, loaned him $13,000 of the money. Two thousand dollars came from Woods's nephew, Giovanni White, or Woods. The balance of the money came from Woods's "doing parties" and "gambling, horseracing, working, income tax, stuff like that." When speaking with Sergeant Wade and testifying at trial, Woods explained that his nephew, TaDerrius

5

Woods, suggested that Woods wrap the bundles of money to avoid getting robbed. However, in a sworn interrogatory, Woods answered that no one advised him to wrap the money the way it was wrapped on May 14, 2019. In an affidavit dated August of 2021, Woods averred that he kept "most of his money in cash and ha[d] used vacuum sealers and tape like this for years to hide money around [his] property." Woods coated one of the bundles of money with fifth-wheel grease to prevent worms from eating it, as he had intended to bury it.

According to Woods, between May 1, 2019 and May 14, 2019, Woods perused truck papers and magazines and noticed that there were more trucks and trailers for sale in Houston than back home in Mississippi. On May 13, 2019, Woods rented a car because the air conditioning in his truck was not functioning. At some point in the middle of the evening, Woods decided to take the trip to Houston. Woods denied making the admissions that Deputy Sandoval claimed that Woods made, explaining that he, Sergeant Wade, and Deputy Sandoval "were talking about some TV-type stuff."

Davis also testified. Woods and Davis have been a couple since 2006 and have two daughters together. From 2006 to 2016, Davis worked at McDonald's making between $5.15 and $7.55 per hour. From 2016 to 2019, Davis worked at Magnolia Bluffs Casino, making between $9 and $10 per hour. Woods asked Davis a few times over the years for money to start a trucking business. The last

time Woods asked was a couple of weeks before the seizure on May 14, 2019. Davis agreed and gave Woods the money between three and five days before Woods's trip to Houston.

Davis was aware of Woods's burying money and had seen Woods package money, but had not seen him bury or dig up money. Prior to her deposition in 2022, Davis did not know that Woods was going to Houston on May 14, 2019. Davis was unaware of the bundles of money that Woods was taking to Houston.

The State called Woods's niece, Pinder, to refute that she gave Woods $13,000 and that Woods stored cash at the family property. Pinder also denied that Woods earned any money doing work for her husband, Willie Pinder, or selling horses, as Woods testified. Pinder testified that her son organized the parties that Woods referred to in his testimony and that Woods had no involvement in them and did not receive any of the proceeds.

Notwithstanding the questionable origins of the money, the jury was only asked to resolve whether the money was "intended to be used in the commission of the possession of a controlled substance" and not whether it was proceeds from prior illegal activity.

**Appellant's Challenges to the Sufficiency of the Evidence:**

In their first two issues, appellants challenge the sufficiency of the evidence. For reasons we explain below, we agree that the evidence is legally insufficient to support the jury's verdict and the trial court's judgment of forfeiture.

## A.    Standard of Review

Evidence is legally insufficient to support a jury finding when (1) the record discloses a complete absence of evidence to prove a vital fact, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 613 (Tex. 2016). A legal sufficiency challenge fails if more than a scintilla of evidence supports the challenged finding. *Tex. Outfitters Ltd. v. Nicholson*, 572 S.W.3d 647, 653 (Tex. 2019). More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Albert v. Fort Worth & W. R.R. Co.*, 690 S.W.3d 92, 97 (Tex. 2024) (per curiam). We view the evidence in the light most favorable to the verdict. *Id.* We must credit evidence favorable to the finding if a reasonable jury could and disregard contrary evidence unless a reasonable jury could not. *Crosstex N. Tex. Pipeline*, 505 S.W.3d at 613.

When determining whether evidence is factually insufficient to support a finding, we must consider and weigh all the evidence relevant to that finding. *Id.* at 615. If the credible evidence supporting the finding is so weak or so contrary to the overwhelming weight of the evidence, or it amounts to no evidence, we will set aside the finding and order a new trial. *Id.* We may not substitute our judgment for that of the jury. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). The jury is the sole judge of the credibility of the witnesses and the weight to give their testimony. *Id.*

## B.    Probable Cause to Seize

In forfeiture proceedings, the State bears the burden to show probable cause for seizing a person's property. *$56,700 in U.S. Currency v. State*, 730 S.W.2d 659, 661 (Tex. 1987) (citing TEX. CONST. art. I, § 9). To meet this burden, the State must present sufficient evidence to establish a reasonable belief that a substantial connection exists between the property to be forfeited and the criminal activity defined by the statute. *State v. $11,014.00*, 820 S.W.2d 783, 784 (Tex. 1991). This is accomplished when the State proves that it is more reasonably probable than not that the seized currency was either intended for use in, or derived from, a violation of the offenses listed in the forfeiture statute. *State v. $5,500 in U.S. Currency*, 296 S.W.3d 696, 701 (Tex. App.—El Paso 2009, no pet.). For the purposes of this

appeal, we assume without deciding that the officers had probable cause to seize the cash involved in this controversy

## C. Intent to Use the Money in the Commission of the Possession of a "Controlled Substance"

It is the State's burden to establish, by a preponderance of the evidence, a substantial nexus or connection between the property to be forfeited and the statutorily defined criminal activity, which it may show by circumstantial evidence. *$27,877.00 Current Money of U.S. v. State*, 331 S.W.3d 110, 117 (Tex. App.—Fort Worth 2010, pet. denied). The State may not seize property based on mere suspicion. *See $43,774.00 U.S. Currency v. State*, 266 S.W.3d 178, 187-88 (Tex. App.—Texarkana 2008, pet. denied); *United States v. One 1978 Chevrolet Impala*, 614 F.2d 983, 984 (5th Cir. 1980). As charged here in Question No. 2, the State had to prove that the money "was intended to be used in the commission of the possession of a Controlled Substance," with "Controlled Substance" defined as "heroin, cocaine, ecstasy (also known as, 3,4-methelynedioxymethampetamine, or MDMA) methamphetamine, or marihuana."[1]

In *Approximately $31,421.00 v. State*, 485 S.W.3d 73 (Tex. App.—Houston [14th Dist.] 2015, pet. denied), the court of appeals found insufficient evidence to

---

[1]    The jury was alternatively asked in Question No. 3 whether the money was the proceeds of criminal activity and being laundered. Because the jury answered "no" to that question, we address the evidentiary sufficiency of only the jury's affirmative finding to Question No. 2.

support the jury's finding of contraband where the respondent was traveling from Atlanta with a bag containing a large sum of cash. The respondent was in a bus station and, according to the police, looking nervous and as if he were avoiding police contact. *Id*. at 75. The respondent consented to a search, during which police officers found cash bundled in cellophane in the respondent's bag. Police officers had a police dog sniff the bag, and the dog alerted to the presence of narcotics in the bag. *Id*. at 79. However, police officers found no drugs or drug paraphernalia in the bag and conducted no further testing on the bag or the money. *$31,421.00*, 485 S.W.3d at 79, 83. The respondent was initially charged with money laundering, but the grand jury returned a no-bill due to the lack of probable cause. *Id*. at 83. The court of appeals held that the evidence was insufficient to establish that the money was contraband, reasoning that "it is not enough to convince a jury that something is out of the ordinary." *Id*. at 84 (citation modified).

In this case, as in *$31,421.00*, there was no direct evidence connecting the money to the possession of a Controlled Substance. 485 S.W.3d at 77. Woods was traveling from Mississippi to Houston[2] with two large bundles of cash,[3] wrapped in plastic, similar to the respondent in *$31,421.00*. Like the respondent in *$31,421.00*,

---

[2]    Traveling a particular route amounts to "mere conjecture" of criminal activity. *See Deschenes v. State*, 253 S.W.3d 374, 383 (Tex. App.—Amarillo 2008, pet. ref'd).

[3]    Possession of a large sum of money is not illegal in and of itself. *$27,920.00 in U.S. Currency v. State*, 37 S.W.3d 533, 535 (Tex. App.—Texarkana 2001, pet. denied).

the deputies described Woods's demeanor as nervous.[4] A narcotics detection dog alerted to the odor of one of the five Controlled Substances after the seizure, but the deputies found no narcotics or paraphernalia, as in *$31,421.00*.[5] Woods was not charged with any crime in connection with this police encounter or the cash, which is similar to the no-billed charges in *$31,421.00*. The evidence of drug trafficking in this case (Deputy Sandoval's various accounts of Woods's mentioning a cousin's drug-trafficking boyfriend) amounts to little more than what Deputy Sandoval himself characterized as "small talk." Deputy Sandoval wrote in his supplement to the offense report that:

> [Woods] voluntarily was explaining to me why he had come to Houston and mentioned he had never done this before and knows drugs are moved through this area. He continued to mention his female cousin's boyfriend who was from his home town is [i]nvolved in the drug world. [H]e continued to mention that [person] moves drugs regu[l]arly.

At trial, Deputy Sandoval testified that Woods told him that his cousin's boyfriend was "involved in the drug world," and "that he was being paid to come to Houston with this money because the trucking business was slow back home where he was from." According to Deputy Sandoval, appellant Woods further

---

[4]     Nervousness is not evidence of criminal activity. *Monjaras v. State*, 679 S.W.3d 834, 849 (Tex. App.—Houston [1st Dist.] 2023, no pet.); *Glass v. State*, 681 S.W.2d 599, 602 (Tex. Crim. App. 1984) (en banc).

[5]     The dog alerting to such odor on the money, standing alone, is no evidence that Woods intended to use the money in the future to possess a Controlled Substance. *$80,631.00 v. State*, 861 S.W.2d 10, 12 (Tex. App.—Houston [14th Dist.] 1993, writ denied).

stated that, "[o]nce he arrived to Houston, he was to make a phone call to somebody to get further instructions." Woods denied making the admissions as Deputy Sandoval characterized them, explaining that Woods, Sergeant Wade, and Deputy Sandoval "were talking about some TV-type stuff." Even taking Deputy Sandoval's testimony at face value, it does not amount to an admission by Woods that he intended to use the money to purchase any illegal drugs, let alone one of the five specific drugs defined as a Controlled Substance. Rather, Deputy Sandoval recounted what could have just as easily been two, unrelated discussions about Woods's knowing people who are involved in drug trafficking and Woods's plan to come to Houston to conduct business related to the trucking business. Because mere knowledge of someone involved in drug trafficking is just as consistent with innocent conduct as commission of one of the enumerated offenses, the evidence is legally insufficient to support the jury's finding that the cash was "intended to be used in the commission of the possession of a Controlled Substance." *$56,700*, 730 S.W.2d at 662  (holding presence of small amounts of cocaine and paraphernalia in vicinity of cash was equally consistent with either trafficking drugs or merely using drugs, and therefore insufficient for forfeiture); *see $567.00 in U.S. Currency v. State*, 282 S.W.3d 244, 250 (Tex. App.—Beaumont 2009, no pet.) (stating even property in possession of known, admitted drug dealer with no other proven source of income is factually insufficient to support forfeiture in absence of additional

evidence linking property to enumerated offense). In a factually similar case the Northern District of Texas has likewise found such evidence insufficient. *U.S. v. $80,760.00 in U.S. Currency*, 781 F.Supp. 462, 478-79 (N.D. Tex. 1991) (holding evidence insufficient where two men carrying large sums of cash at airport and acting nervous claimed to be en route to purchase cars for resale, but neither held wholesaler's license or carried auto sales literature, and cash yielded alert by narcotics detection dog).

Accordingly, because the evidence is legally insufficient to support the jury's finding that the money was intended to be used to possess a Controlled Substance, we sustain Appellants' second issue. Because this issue is dispositive of the appeal, we need not consider Appellants' remaining issues. *See* TEX. R. APP. P. 47.1 (providing that "court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal").

## Conclusion

Appellants have requested that this Court reverse the judgment below and render judgment for appellants.

We reverse the judgment of the trial court, render judgment ordering the State to return the proceeds to Woods and Davis, and remand the case to the trial court for proceedings consistent with this opinion.

14

Amparo "Amy" Guerra
Justice

Panel consists of Justices Guerra, Guiney, and Johnson.